**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KALEEA DAVIS<br>3805 Highway 33, Apt. 6<br>Neptune, NJ 07753<br><br>                Plaintiff,<br><br>    v.<br><br>MAZZA RECYCLING SERVICES LTD.<br>d/b/a MAZZA RECYCLING<br>3230 Shafto Road<br>Tinton Falls, NJ 07753<br>    and<br>MAZZA RECYCLING CORPORATION<br>d/b/a MAZZA RECYCLING<br>101 Memorial Drive<br>Neptune, NJ 07753<br><br>                Defendants. | CIVIL ACTION<br><br>NO.: _____<br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Kaleea Davis (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Mazza Recycling Services Ltd. d/b/a Mazza Recycling and Mazza Recycling Corporation d/b/a Mazza Recycling (*hereinafter* "Defendants") of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq*.), the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq.*) the New Jersey Law against Discrimination ("NJ LAD"), and other state common law claim(s). As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth *herein*.

## JURISDICTION AND VENUE

2. This Court may properly maintain jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co v. State of Washington*, 326 U.S. 310 (1945), and its progeny.

3. This action is initiated pursuant to a federal law. The United States District Court for the District of New Jersey has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

4. Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendants reside in and/or conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing her Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

7. Plaintiff is an adult who resides at the above-captioned address.

8. Mazza Recycling Services Ltd. *d/b/a* Mazza Recycling is a New Jersey corporation that operates waste collection, recycling, and disposal services in New Jersey, with a location at the above-captioned address. Plaintiff was primarily located and worked out of the above captioned Tinton Falls, New Jersey address.

9. Mazza Recycling Corporation *d/b/a* Mazza Recycling is a New Jersey corporation that operates waste collection, recycling, and disposal services located at the above-captioned address.

10. Because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.

11. At all times relevant herein, Defendants acted through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

**FACTUAL BACKGROUND**

12. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

13. Plaintiff was employed with Defendants for approximately 2 weeks as a trailer driver from on or about January 25, 2021 until on or about February 8, 2021.

14. Plaintiff was primarily supervised by Dispatcher, Rommel Powell (hereinafter "Powell") and Safety Manager, Chris Bergacs (hereinafter "Bergacs").

15. Throughout Plaintiff's employment with Defendants, Plaintiff was a hard-working employee who performed her job well.

16. Plaintiff is an adult female, and was the only female trailer driver in the yard.

17. From the start of Plaintiff's employment with Defendants, Plaintiff was subjected to disparate and harassing treatment because of Plaintiff's gender by Defendants' management. For example, but not intended to be an exhaustive list, unlike Plaintiff's male coworkers, Defendants' male management:

   a. treated Plaintiff in a derogatory and condescending manner;

   b. advised Plaintiff during her onboarding that Plaintiff was the only female in the yard and would likely take harassment from the male trailer drivers;

   c. berated Plaintiff for having driving violations on her license, where upon information and belief, other male drivers had the same or worse violations and were not criticized for same;

   d. informed Plaintiff that as a female, Plaintiff "wasn't built" to drive to the landfill as part of her job duties because the male trailer drivers would harass Plaintiff and make Plaintiff cry; and

   e. mocked Plaintiff following work-related injuries (discussed in more detail *infra*) that a male driver would have just "eaten" the injury and not "shed a tear" about it.

18. Plaintiff objected to the aforesaid instances of disparate and discriminatory behavior on account of Plaintiff's gender on multiple occasions, including informing Powell and Bergacs that Plaintiff had "over-the-road experience" and could handle herself against any male, and further inquired as to why management believed the male trailer drivers at the landfill would likely make Plaintiff cry but not Plaintiff's male colleagues.

19. On or about Friday, January 29, 2021, Plaintiff suffered two work-related injuries, wherein an extremely heavy top bar on a damaged trailer swung and hit Plaintiff in her face (eye socket). About 1 hour later, Plaintiff was hit in the jaw by a trailer handle.

20. As a result of both incidents, Plaintiff suffered swelling, bruising, and intense pain to her face, which affected her ability (at times) to perform some daily life activities including, but not limited to speaking, chewing, seeing at times, moving, and working.

21. Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendants; however, Plaintiff did require reasonable medical accommodations at times *infra*.

22. Plaintiff's trainer, who was with Plaintiff at the time, witnessed both incidents, but informed Plaintiff that a male employee would just "eat" the injury and not "shed a tear," clearly attempting to discourage Plaintiff from filing a worker's compensation claim.

23. The following day, however, Plaintiff texted both Powell and Bergacs that Plaintiff had been injured at work.

24. Bergacs responded by asking Plaintiff if she could see clearly, and informed Plaintiff that they would see if they could send Plaintiff to urgent care, "but they won't do to much more from what your saying."

25. Defendants' facility was closed for the next few days because of a snow storm. However, when Plaintiff returned to work on or about Wednesday, February 3, 2021, Plaintiff was sent by Defendants to urgent care because Plaintiff was still experiencing extreme pain, swelling, bruising, a lump on her cheek, and Plaintiff had suffered from head pain and speech difficulties over the weekend.

26. Urgent care advised that Plaintiff immediately go the ER and referred Plaintiff to a neurologist. Plaintiff was further informed that she would not be able to obtain an appointment with a neurologist until in or about March 21, 2021.

27. In the meantime, Plaintiff was still suffering from pain, difficulty eating, swelling, bruising, and a large knot on Plaintiff's face, but was released to return to work by the urgent care physician on or about February 8, 2021.

28. However, when Plaintiff arrived for work on February 8, 2021, Plaintiff was informed by Powell that "this is just not going to work out," and then was abruptly terminated from Defendants.

29. Powell further stated "people are saying that you have an issue climbing in and out of the back of trailers (to clean out debris)," and "then you got injured." When Plaintiff protested that Plaintiff had suffered serious health conditions/work-related injuries from the damaged trailer, Powell responded "no one else got injured from it."

30. Plaintiff believes that Defendants' purported reason for Plaintiff's termination – having issues getting in and out of the back of trailers – is completely pretextual because (1) Plaintiff had been climbing in and out of the back of trailers multiple times during her tenure with Defendants without issue; (2) Defendants' management admitted that Plaintiff was being terminated for her serious health conditions/work-related injuries; (3) Plaintiff was terminated in close proximity to her reporting and/or seeking treatment for her aforesaid serious health conditions/work-related injuries; and (4) Plaintiff was terminated in close proximity to her objections to/concerns of gender discrimination.

## COUNT I
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Hostile Work Environment; and [4] Failure to Accommodate)

31. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

32. Plaintiff suffered from qualifying health conditions under the ADA, which affected her ability (at times) to perform some daily life activities including, but not limited to speaking, chewing, seeing at times, moving, and working.

33. Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendants; however, Plaintiff did require reasonable medical accommodations at times.

34. Plaintiff required reasonable accommodations from Defendant, including but not limited to intermittent time off to treat her serious health conditions and/or attend doctor's appointments.

35. Prior to abruptly terminating Plaintiff's employment, Defendant (1) failed to engage in the interactive process as required under the ADA and (2) failed to accommodate Plaintiff under the ADA for taking and/or requesting time off for her aforesaid serious health conditions.

36. Plaintiff believes and therefore avers that she was subjected to a hostile work environment and terminated from Defendants because of: (1) her known and/or perceived health problems; (2) her record of impairment; (3) her requested accommodations (which constitutes illegal retaliation); and (4) Defendants failure to properly accommodate her.

37. These actions aforesaid constitute violations of the ADA.

## COUNT II
## Violations of Title VII
### ([1] Gender Discrimination; [2] Retaliation; and [3] Hostile Work Environment)

38. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

39. During Plaintiff's employment with Defendants, she was subjected to discrimination and a hostile work environment through disparate treatment and demeaning and/or derogatory treatment because of her gender.

40. Plaintiff objected to the aforementioned instances of gender discrimination and disparate treatment by Defendants' management but her concerns were ignored, and Defendants' management continued to subject her to hostility, animosity, and disparate treatment because of her gender.

41. Plaintiff was abruptly terminated for pretextual reasons.

42. Plaintiff believes and therefore avers that she was subjected to a hostile work environment and terminated because of her gender and her objections to gender discrimination.

43. Defendants' actions as aforesaid constitute unlawful discrimination and retaliation under Title VII.

## COUNT III
## Violations of the New Jersey Law Against Discrimination ("NJ LAD")
### ([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Hostile Work Environment; and [4] Failure to Accommodate)

44. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

45. Plaintiff reasserts each and every allegation from Count I, as such actions in this case constitute identical violations of the NJ LAD.

## COUNT IV
### Violations of the New Jersey Law Against Discrimination ("NJ LAD")
([1] Gender Discrimination; [2] Retaliation; and [3] Hostile Work Environment)

46. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47. Plaintiff reasserts each and every allegation from Count II, as such actions in this case constitute identical violations of the NJ LAD.

## COUNT V
### Common-Law Wrongful Discharge
(Public Policy Violation)

48. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

49. Upon information and belief, Plaintiff was terminated in substantial part for making a claim for worker's compensation benefits against Defendants and/or for her work-related injuries.

50. It is against New Jersey's public policy for an employee to be terminated for making a worker's compensation claim. *Stewart v. County of Hudson*, 2011 N.J. Super. Unpub. LEXIS 1965, 34 (App. Div. July 22, 2011).

51. The mere temporal proximity between Plaintiff's claim for worker's compensation and her termination creates an inference that her termination was in retaliation for making such a claim.

52. Additionally, the hostility and animosity that she was subjected to after she sustained a work-related injury and/or made a workers' compensation claim creates an inference that her termination was in retaliation for making such a claim.

53. These actions as aforesaid constitute wrongful termination in New Jersey.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

    A.    Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

    B.    Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

    C.    Plaintiff is to be awarded punitive and liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

    D.    Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

    E.    Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

    F.    Plaintiff is to be awarded any and all statutory enhancements available as a matter of law.

    G.    Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

                                  Respectfully submitted,

                                  **KARPF, KARPF & CERUTTI, P.C.**

By: _____

                                  Ari R. Karpf, Esq.
                                  3331 Street Rd.
                                  Two Greenwood Square, Suite 128
                                  Bensalem, PA 19020
                                  (215) 639-0801

Dated:  June 24, 2021